IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-cv-00271

| | |
|---|---|
| Henrietta Renee Mason, individually and as Administrator of the Estate of Tyrone Mason, <br><br> Plaintiff <br><br> vs. <br><br> Garrett Macario, in his individual capacity, <br><br> Defendant. | COMPLAINT <br> (Jury Trial Demanded) |

Henrietta Renee Mason, individually and as Administrator of the Estate of Tyrone Mason, by and through her undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Garrett Macario in his individual capacity for the death of Tyrone Mason on October 7, 2024.

## PARTIES

1. Plaintiff Henrietta Renee Mason ("Plaintiff") is the duly appointed Administrator of the Estate of Tyrone Mason. Plaintiff was appointed Administrator of Tyrone Mason's estate by order of the Wake County Superior Court, dated May 5, 2025, File Number 25E001500-910.

2. At all times relevant to this Complaint, decedent Tyrone Mason ("Decedent" "Decedent Mason" "Mr. Mason"), aged 31 years old, was a citizen and resident of Raleigh, North Carolina.

3. Upon information and belief, Defendant Garrett Macario (hereinafter "Defendant Macario") is a citizen of North Carolina and resides in Holly Springs, North Carolina, and was

employed as a state trooper with the North Carolina State Highway Patrol and was acting under color of state law at all times relevant to this Complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the federal claims against Defendant Macario pursuant to 18 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

5. This Court further has personal jurisdiction over Defendant as he resides in this District and his acts and/or omissions complained of occurred within this District.

6. Venue is proper in the Eastern District of North Carolina, Western Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), because Defendant resides in Holly Springs and the acts or omissions complained of occurred in Raleigh.

## FACTUAL ALLEGATIONS

7. Around 2:25 a.m. on October 7, 2024, Defendant Macario was parked at a Speedway gas station on Capital Boulevard in Raleigh, North Carolina.

8. Defendant Macario was operating an unmarked State Patrol vehicle, which was orange or red in color and did not bear any markings indicating that it was a highway patrol vehicle.

9. Around 2:28 a.m., Decedent Mason drove past the gas station where Defendant Macario was parked.

10. Defendant Macario thereafter pulled out of the gas station, engaged his lights and siren, and began pursuing Decedent Mason at high speed.

11. Upon information and belief, Defendant Macario recognized the dangers associated with pursuing Decedent Mason and engaging in a high-speed chase through Raleigh, but disregarded such dangers and opted to pursue Decedent Mason.

12. As a result of being pursued, Decedent began accelerating and increasing speed.

13. After pursuing Decedent Mason for roughly over a mile, Defendant Macario disengaged his lights and siren around 2:29 a.m.

14. As Decedent Mason and Defendant Macario continued down Capital Boulevard, they approached a section of the road where Wake Forest Road passes over Capital Boulevard, an area which had a concrete median dividing opposite flows of traffic and two overpasses with concrete pillars running perpendicular to the road.

15. As Decedent approached this stretch of the road, he lost control of his vehicle, ran across the concrete median to the opposite side of the road, and collided with a concrete pillar beneath the first highway overpass.

16. Defendant Macario approached the area immediately thereafter and saw plumes of smoke and the wreckage of Decedent's vehicle.

17. Around 2:30 a.m., Defendant Macario reengaged his lights, called for emergency responders, and parked his vehicle near the accident scene.

18. Defendant Macario then exited his vehicle and approached the wreckage.

19. As he approached Decedent's vehicle, Defendant Macario shined his light on it, before looking around the outside of the wreckage.

20. However, Defendant Macario did not check the inside of Decedent's vehicle to determine if Decedent was alive, injured, or in need of assistance.

21. Decedent Mason's time of death was later determined to be 2:40 a.m.

22. After initially checking the exterior and surroundings of Decedent's vehicle, Defendant Macario called his supervisor, Trooper Matthew Morrison.

3

23. Defendant Macario explained that he pursued Decedent with the intention of pulling him over but turned his lights off. He further explained that after turning his lights off, he came around the corner and found that Decedent had wrecked. Trooper Morrison responded, "Please tell me you're fucking joking."

24. Trooper Morrison asked Defendant Macario if he had radioed dispatch to inform them that he was in pursuit. Defendant Macario responded saying no, and that he turned his siren and lights off when he realized it was not a smart chase.

25. Defendant Macario further indicated that he lost sight of Decedent until he came around the corner and saw the smoke from the wreckage. Trooper Morrison responded, "Sounds to me like its RPD's[1] problem."

26. Defendant Macario then reiterated that he did not feel his pursuit of Decedent was "a safe chase."

27. Trooper Morrison again stated that it was RPD's problem and advised Defendant Macario not to mention to the Raleigh Police officers that he had attempted to stop Decedent. Instead, Trooper Morrison advised Defendant Macario to tell the RPD that he "drove up on" the accident.

28. Trooper Morrison then asked Defendant Macario, "have you confirmed he's D.R.T.[2] though?" Defendant Macario replied "yea" despite having made no attempts to check on Decedent Mason or ascertain his status.

---

[1] Trooper Morrison was referring to the Raleigh Police Department.
[2] Upon information and belief, D.R.T. is short for "dead right there."

29. Before the two got off the phone, Trooper Morrison again stated that the accident was RPD's problem, that he "wouldn't say shit" to RPD about it, and that Defendant Macario should just say "I drove up on it."

30. Before hanging up, Defendant Macario agreed with Trooper Morrison and thanked him for his advice.

31. After the phone call, Defendant Macario reapproached Decedent's vehicle and conducted a cursory inspection of the exterior of the vehicle, but did not check on Decedent to determine his condition.

32. Shortly thereafter, officers from the Raleigh Police Department arrived on scene.

33. Defendant Macario made contact with the RPD officers and told them that the accident was "fatal", that he "rolled up on it", and that Decedent "obviously came over the median." Defendant Macario told RPD officers that the accident was fatal despite having failed to check on Decedent Mason to determine his status or whether he was in need of assistance.

34. Around 2:36 a.m., a Raleigh Police officer asked Defendant Macario if he had checked on the driver, to which Defendant Macario responded "not yet, no."

35. Thereafter, another RPD officer asked Defendant Macario if he was "pulling [Decedent] over or something?"

36. Defendant Macario responded, "no" and stated, "this is just the little area I work and I came up on it and I saw all the smoke and heard all the cars hitting the debris."

37. Decedent Mason ultimately died as a result of the injuries he suffered during the wreck.

38. Following the incident, Plaintiff was informed that Decedent Mason died in a car accident with no witnesses, but Plaintiff did not believe she was given the full story.

39. Thereafter, Plaintiff was forced to investigate the circumstances surrounding Decedent Mason's death, which included sending hundreds of emails to various government agencies, hiring an attorney, and taking her concerns to the Wake County District Attorney.

40. Plaintiff's efforts eventually resulted in an investigation into Trooper Morrison and Defendant's actions by the North Carolina State Bureau of Investigation.

41. Defendant Macario and Trooper Morrison's role in the incident and subsequent cover up, as well as the misleading statements Defendant Macario gave the RPD, were not revealed until the North Carolina State Bureau of Investigation and the Wake County District Attorney reviewed the body camera and dash-camera footage from the scene.

42. Following this discovery, Defendant Macario and Trooper Morrison were both placed on administrative leave pending an investigation by the North Carolina State Bureau of Investigation.

### FOR A FIRST CAUSE OF ACTION
### (Violation of Substantive Due Process Rights to Life and Bodily Autonomy in Violation of the Fourteenth Amendment)
### (*against Defendant Macario*)

43. Plaintiff repeats and realleges the factual allegations in paragraphs 7–42 as if fully restated herein.

44. This action is brought against Defendant Macario in his individual capacity, pursuant to the Fourteenth Amendment to the United States Constitution, for Defendant's violations of 42 U.S.C. § 1983.

45. At all times material hereto, Defendant Macario was an employee and/or agent of the North Carolina State Highway Patrol and acting within the course and scope of his employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the North Carolina State Highway Patrol.

6

Case 5:25-cv-00271-D-RN    Document 1    Filed 05/21/25    Page 6 of 12

46. On October 7, 2024, Defendant Macario, operating an unmarked vehicle, engaged Decedent Mason in a dangerous high-speed chase through Raleigh.

47. Defendant Macario had knowledge of the significant risks associated with engaging Decedent in a high-speed chase and with engaging in a highspeed chase on a busy street through Raleigh.

48. Defendant Macario's decision to engage Decedent Mason in a high-speed chase through Raleigh that he knew to be dangerous, and his subsequent attempts to cover it up, is conduct that shocks the conscience and Defendant Macario was deliberately indifferent to the threats to Decedent's life and bodily autonomy.

49. As a result of Defendant Macario's conscience-shocking conduct, Decedent Mason was involved in a fatal car crash.

50. Notably, Defendant Macario has never alleged that Decedent Mason was violating the law or otherwise provided reason for why he engaged him in a high-speed pursuit, and he further misled RPD officers by telling them he was not trying to pull Decedent Mason over.

51. Moreover, before checking on Decedent to determine his condition, Defendant Macario began conspiring with Trooper Morrison to cover up Defendant Macario's role in the accident. Defendant Macario was ultimately placed on administrative leave as a result of lying to the Raleigh Police Department.

52. Through the conduct described herein, Defendant Macario, acting under color and authority of law, deprived Decedent Mason of his rights to life and bodily autonomy without due process of law.

53. Defendant Macario's conduct was objectively and subjectively unreasonable.

54. Defendant Macario's conscience-shocking conduct and deliberate indifference to the threats to Decedent's life and bodily autonomy were the cause in fact and proximate cause of Decedent's injuries and death.

55. These failures constitute violations of Decedent Mason's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

56. As a direct and proximate result of Defendant Macario's wrongful acts and omissions, Mr. Mason's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

57. Defendant Macario is liable to Plaintiff for Decedent Mason's injuries, suffering, and death.

**FOR A SECOND CAUSE OF ACTION**
**(Failure to Render Aid in Violation**
**of the Fourteenth Amendment)**
**(*against Defendant Macario*)**

58. Plaintiff repeats and realleges the factual allegations in paragraphs 7–42 as if fully restated herein.

59. This action is brought against Defendant Macario in his individual capacity, pursuant to the Fourteenth Amendment to the United States Constitution for Defendant's violations of 42 U.S.C. § 1983.

60. At all times material hereto, Defendant Macario was an employee and/or agent of the North Carolina State Highway Patrol and acting within the course and scope of his employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the North Carolina State Highway Patrol.

61. As set forth in this Complaint, on October 7, 2024, Defendant Macario, attempting to apprehend Decedent, engaged him in a high-speed chase, causing Decedent to crash his vehicle into a concrete median and concrete pillar.

62. After parking near Decedent's vehicle, Defendant Macario examined the exterior of the vehicle and the surrounding area, but did not attempt to render aid to Decedent or even check to see if he was alive, injured, or in need of assistance.

63. Defendant Macario then called Trooper Morrison to speak with him about covering up Defendant Macario's role in the accident rather than check on Decedent or attempt to render aid.

64. Following this conversation, Defendant Macario reapproached Decedent's vehicle and examined the exterior and surroundings, but again failed to check on Decedent or attempt to render aid.

65. As such, no one attempted to render aid to Decedent until officers from the Raleigh Police Department arrived on scene and learned that Defendant Macario had not already done so.

66. Defendant Macario's failure to render aid to Decedent Mason constitutes deliberate indifference to his serious medical needs.

67. By the time of this incident, the laws prohibiting Defendant Macario's failure to render aid were clearly established under the Fourteenth Amendment of the United States Constitution.

68. Defendant Macario knew or should have known, and every reasonable officer in his position would have concluded, that the failure to render aid to Decedent Mason was cruel and unlawful.

69. Prior to his failure to render aid, Defendant Macario attempted to apprehend Decedent Mason, causing him to crash into a concrete median and pillar, and thereby establishing a special duty to come to his aid.

70. Defendant Macario faced no danger in rendering aid to Decedent Mason, as he was incapacitated. Defendant Macario was the only person who could have provided immediate aid to Decedent Mason at the scene.

71. Defendant Macario's conduct was objectively and subjectively unreasonable.

72. Defendant Macario's clear failure to render aid was the cause in fact and proximate cause of Decedent Mason's injuries and death.

73. As a direct and proximate result of Defendant Macario's acts, omissions, and failure to render aid, Defendant Macario deprived Decedent Mason of the rights guaranteed to him by the Fourteenth Amendment of the United States Constitution, in particular, depriving him of the right to be free of deliberate indifference to serious medical needs.

74. As a direct and proximate result of Defendant Macario's wrongful acts and omissions, Mr. Mason's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury.

75. Defendant Macario is liable to Plaintiff for Decedent Mason's injuries, pain and suffering, and death, and for the harm suffered by his estate.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages against Defendant, as provided by federal law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorneys' fees to Plaintiffs under 42 U.S.C. § 1988;

c. Loss of past and future support and services with interest;

d. Loss of earnings and/or earning capacity;

e. Punitive damages as to those causes of action where they are available; and

f. Such other and further relief as this Court may deem appropriate.

This the 21st day of May, 2025

    STROM LAW FIRM, LLC

    /s/ Bakari T. Sellers
    Bakari T. Sellers
    SC Fed. ID #11099
    South Carolina State Bar #79714
    bsellers@stromlaw.com

    /s/ Mario A. Pacella
    Mario A. Pacella
    SC Fed. ID #7538
    mpacella@stromlaw.com

    /s/ Amy E. Willbanks
    Amy E. Willbanks
    SC Fed. ID #13537
    awillbanks@stromlaw.com

    /s/ Matthew B. Robins
    Matthew B. Robins
    SC Fed. ID #13313
    mrobins@stromlaw.com

    6923 N. Trenholm Road, Suite 200
    Columbia, South Carolina 29206
    Phone: (803) 252-4800

BEN CRUMP LAW, PLLC

/s/ Ben Crump
Benjamin Crump
DC Fed. ID No. 1552623
633 Pennsylvania Ave., NW, Floor 2
Washington, DC 20004
Tallahassee, Florida 32301
(800) 691-7111
ben@bencrump.com


LAW OFFICE OF SEAN P. CECIL, PLLC

/s/ Sean P. Cecil
NC State Bar No. 48882
sean@cecil.law
Ph. : (919) 833-8949
Fax:  (919) 828-4689
PO Box 28186
Raleigh, NC 27611

*Local Rule 83.1 Counsel*

12